53 F.3d 222
 149 L.R.R.M. (BNA) 2293, 130 Lab.Cas. P 11,327
 UNITED MINE WORKERS OF AMERICA, DISTRICT 15; United Mine
Workers of America, International Union; United
Mine Workers of America, Local 9702,
Plaintiffs-Appellees,
v.
BASIN COOPERATIVE SERVICES; Basin Electric Power
Cooperative; Dakota Coal Company, Defendants-Appellants.
 No. 94-2337.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1994.
Decided May 9, 1995.
 
 Malcolm H. Brown, Bismarck, ND, argued, for appellants.
 Irvin B. Nodland, Bismarck, ND, argued (Robert H. Stropp, Jr., Deborah Stern and Sara J. Starrett, on the brief), for appellees.
 Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Basin Cooperative Services[1] appeals a judgment entered on a jury verdict in favor of the United Mine Workers of America[2] for $6.5 million. Basin and the Union entered into a Surface Coal Wage Agreement in 1988, which contained a successorship clause providing that Basin would not sell its operations covered by the wage agreement without securing the purchaser's written agreement to assume Basin's obligation under the wage agreement. On December 28, 1990, Basin sold its interest in the Dakota Star reserves to Coteau Properties Company, without requiring Coteau to assume Basin's obligation under the wage agreement. The Union brought suit under section 301 of the Labor Management Relations Act, claiming that the Dakota Star reserves were part of the operation covered by the wage agreement, and Basin had therefore breached the agreement. Basin, in turn, claimed that the language of the agreement was unambiguous and did not include the Dakota Star reserves. The jury found in favor of the Union. On appeal, Basin argues that the magistrate judge[3] erred in admitting parol evidence to vary the terms of an unambiguous written agreement and that the damages awarded by the jury were excessive and demonstrated the influence of passion and prejudice. We affirm.
 
 
 2
 In the Surface Coal Wage Agreement of 1988 Basin "promise[d] that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred to any purchaser ... without first securing the written agreement of the purchaser ... to assume [Basin's] obligations under this Agreement" (emphasis added). The Agreement also stated: "[T]his Agreement covers the operation of the coal lands, coal producing and coal preparation facilities which are owned or held under lease by [Basin] at the Glenharold surface mine in North Dakota."
 
 
 3
 "Glenharold surface mine" was not defined, either verbally or by maps or other description in the Agreement. The key question in this litigation is therefore whether the term "Glenharold surface mine" in the Agreement included the Dakota Star reserves.
 
 
 4
 The Union contended that the Agreement contained a latent ambiguity in that the term "Glenharold surface mine" was meant to include associated reserves, among which were the Dakota Star reserves. Basin contended that the Agreement was unambiguous and that therefore any extrinsic evidence about what the parties meant by "Glenharold surface mine" was inadmissible under the parol evidence rule. The magistrate judge reserved ruling on the issue and admitted the extrinsic evidence at trial, contingent on her later ruling. The Union introduced evidence that when Basin bought the Glenharold mine, the Dakota Star reserves were part of the purchase. Furthermore, the same bargaining unit had worked on the Glenharold mine and in the Dakota Star area. The Union also introduced the testimony of one of its negotiators for the 1988 Agreement, who said that he asked Basin's negotiator about including the Dakota Star reserves in the Agreement. The Basin negotiator reportedly replied: "Well, you don't need anything on that, you already have that; it's already in the agreement." The magistrate judge implicitly ruled in favor of the Union on the parol evidence question when she submitted the case to the jury with an instruction that the jury could consider the extrinsic evidence:
 
 
 5
 When good arguments can be made for either of two interpretations as to the meaning of a contract term, evidence outside the language of the contract may be considered to explain the terms of the contract or to show the parties' intent. In this regard, the jury may consider evidence such as the history of the Glenharold mine, the negotiations leading to the 1988 Surface Coal Wage Agreement, or other surrounding circumstances.
 
 
 6
 The magistrate judge explicitly ruled this question in the Union's favor after post trial motions.
 
 
 7
 On appeal, Basin continues to argue that the term "Glenharold surface mine" is unambiguous and that the magistrate judge erred in admitting extrinsic evidence about its meaning.
 
 
 8
 Another section 301 case, John Morrell & Co. v. Local Union 304A, 913 F.2d 544 (8th Cir.1990), cert. denied, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991), summarizes the law on this issue:
 
 
 9
 [D]eciding whether contractual language is ambiguous is a question of law which we review de novo; however, to the extent that we review factual findings made by the district court, we apply the clearly erroneous standard.
 
 
 10
 * * * * * *
 
 
 11
 Extrinsic evidence may not be considered "for the purpose of showing that the parties intended to make an agreement which is inconsistent with the unambiguous words of their written contract." Although extrinsic evidence may not be admitted to contradict the parties' intentions as expressed in the writing, it can be admitted to demonstrate that ambiguity exists. To determine whether there is an ambiguity, we must examine the relevant extrinsic evidence and decide whether the contractual language is reasonably susceptible of the meaning proposed by the party asserting the ambiguity. If we decide that the language is ambiguous, then resolution of the ambiguity is a question of fact to be determined by the jury.
 
 
 12
 Id. at 550-51 (citations omitted).
 
 
 13
 In this case, there is no question but that "Glenharold surface mine" meant more than simply land being currently mined. Basin's own employee stated pointedly: "Reserves are part of a mine." Basin's assistant general manager of operations and engineering testified:
 
 
 14
 Q. And you would agree, would you not, that the Glenharold surface mine includes the Fort Clark, the South Stanton and Glenharold Reserves?A. The Glenharold mine includes the areas adjacent to the mine that have been mined or could be mined if they were economical, yes.
 
 
 15
 Q. My question was: Do you agree that it includes the three reserves that I asked about?
 
 
 16
 A. Yes.
 
 
 17
 Q. And how would I know that from looking at the contract?
 
 
 18
 A. I don't know that you would.
 
 
 19
 After these admissions, it is obvious that the court would have to admit extrinsic evidence to determine what reserves were included in the term "Glenharold surface mine." We have already recited the Union's evidence showing that the Dakota Star reserves and Glenharold had been treated as the same operation, and that the Basin negotiator told the Union's negotiator this was implicit in the 1988 Agreement. The magistrate judge correctly admitted the extrinsic evidence.
 
 
 20
 Basin also argues that the $6.5 million jury verdict was excessive, and the result of passion and prejudice in favor of the Union and against Basin. The magistrate judge denied Basin's new trial motion, holding that the Union had presented evidence that the Basin sale of the Dakota Star reserves to Coteau entitled the Union to $24 million in unmitigated damages. Even if each mine worker could mitigate his loss until retirement by half, actual damages would still be $12 million. Therefore, the court held the $6.5 million award was not excessive.
 
 
 21
 Basin appeals this ruling, arguing that the verdict depended on an unjustified suggestion that the Union members were "guaranteed lifetime employment."
 
 
 22
 In considering Basin's new trial motion, the magistrate judge reviewed the evidence and found it sufficient to support the jury's award of $6.5 million. Her calculations are not premised on any unfounded assumption, but on the following stipulations:
 
 
 23
 The Glenharold surface mine is being closed and no coal-producing operations are currently taking place. There will be reclamation work done at the Glenharold mine until sometime in 1995. As of January 1, 1993, there were forty active UMWA employees at the Glenharold mine, nine former employees with recall rights, and one employee on a leave of absence.
 
 
 24
 If [Basin] had opened the Dakota Star Reserves as a mine, these active UMWA employees would have been eligible for employment at the Dakota Star mine, which has an expected life of mining activity until the year 2012.
 
 
 25
 The average age of the active Glenharold employees is 45 years, and on average the employees have 19 years of service at the Glenharold mine. The average earnings of a UMWA employee at the Glenharold mine is approximately forty thousand dollars per year.
 
 
 26
 These stipulations form an adequate basis for the magistrate judge's ruling, and Basin's argument to the contrary is frivolous.
 
 
 27
 We affirm the judgment of the magistrate judge.
 
 
 
 *
 The HONORABLE CHARLES A. SHAW, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 Basin Electric Power Cooperative and Dakota Coal Company are also included as defendants and appellants, as the Union alleges that they and Basin Cooperative Services constitute a single employer signatory to the wage agreement on which this case is based. For brevity's sake, we shall refer to the appellants collectively as "Basin."
 
 
 [2]
 The specific divisions of the United Mine Workers that are plaintiffs here are: United Mine Workers of America, District 15; United Mine Workers of America, International Union; and United Mine Workers of America, Local 9702
 
 
 [3]
 The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota, tried the case by consent of the parties